UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JENNIFER N. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:12-00091 |
| | ) | Judge Sharp |
| v. | ) | |
| | ) | |
| PUTNAM COUNTY and PUTNAM | ) | |
| COUNTY SHERIFF'S DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a Motion for Summary Judgment filed by Defendants Putnam County and Putnam County Sheriff's Department (Docket No. 16), to which Plaintiff Jennifer N. White has responded in opposition (Docket No. 24), and Defendants have replied. (Docket No. 29). For the reasons that follow, the Motion for Summary Judgment will be granted, and Plaintiff's claims will be dismissed.

## I. FACTUAL BACKGROUND

Plaintiff has been an employee of the Putnam County Sheriff's Department since 2000. David Andrews is the Sheriff, and he makes all employment decisions.

Over the years, Plaintiff has worked her way up through the ranks. In late 2006, she was promoted by Sheriff Andrews from dispatcher to Records Clerk.

In late 2006, while working in that position (although she had been reclassified to Bookkeeper so that she could earn more), Plaintiff expressed an interest in becoming a Certified Law Enforcement Officer. With Sheriff Andrews' blessing, she attended the Tennessee Law Enforcement Training Academy. At the time, he anticipated that Plaintiff would become a Deputy Sheriff, and

1

work as a road patrol officer.

While at the training academy, a School Resources Officer ("SRO") position became available when SRO Casey Flatt quit. The parties dispute whether Plaintiff took the initiative by expressing interest in the job, or whether Lieutenant Neil Blythe of the Sheriff's Department called Plaintiff about the position just before her graduation. Regardless, Plaintiff was offered the position of SRO, which she cheerfully accepted.

A SRO is a deputy sheriff, and the only difference between a SRO and a road patrol deputy is that the SRO's principal assignment is in the school, and an SRO undergoes more training.[1] Both receive the same pay, benefits, uniforms, patrol car, weapon, and job title. Those working as SROs are assigned to be patrol officers during the summer and holidays, or when school is not otherwise in session.

Plaintiff did an excellent job as a SRO, and Sheriff Andrews was pleased with her performance. At some point, she was assigned to be the SRO at Monterey Schools.

Plaintiff claims that, over time, she began to have some problems with Chris Pierce, the Vice Principal at Monterey, that he was not receptive to her, and that their relationship deteriorated. She shared those frustrations with Lieutenant Bryan Whitefield.

Because of her growing unhappiness in the school and her desire to "[serve] the public," Plaintiff informed Lieutenant Whitefield and Deputy Chief Jack Farley that she wanted to be a road deputy. Her preferences were relayed to Sheriff Andrews. On at least two separate occasions, Plaintiff contacted Sheriff Andrews directly about being transferred to a position as a road deputy.

---

[1] There are approximately 48 patrol deputies in the county, and less than a handful of SROs.

Sheriff Andrews makes all of the employment decisions for the department, and this includes where deputies are to be assigned. Then satisfied with the status quo and Plaintiff's job performance, he chose to keep Plaintiff assigned as a SRO. He claims that he was unaware of any problems that Plaintiff may have been having in the school, and he thought Plaintiff had maintained a positive relationship with the Board of Education, and the administrators, teachers and students at the school; otherwise, he would have heard about it from the school. He further claims he told Plaintiff that, when it was in the best interest of the department, and when he could, he would move her to road patrol.[2]

Plaintiff claims Lieutenant Whitefield told her she was not going to go on patrol because she was a small female. She also claims Deputy Chief Farley told her that the department was not "family friendly," and observed that she was a single mother of two children, which she took to mean that her status as such would keep her from working the shifts that patrol officers work.

However, Plaintiff concedes that the Sheriff did not tell her she could not go on patrol because of her size or gender, and, in fact, she patrolled the county during the summer and when school was on break. Plaintiff also concedes that the Sheriff never said anything about her gender. Plaintiff also believes that the Sheriff thought she was doing a good job at the school, that this was a good reflection on both herself and the Sheriff's Department, and that it was not unreasonable for the Sheriff to want to keep her at the school. In fact, she stated both in her deposition and in her brief that "[s]he had excellent relationships with the principals, teachers, students, staff, parents and citizens while working as an SRO." (Docket No. 24 at 11).

---

[2] Deputy Chief Farley testified in his deposition that, when he told Sheriff Andrews about Plaintiff's desire to move to patrol, the Sheriff told him that he was aware of those wishes and that he would move Plaintiff once he found a replacement for her position as a SRO.

3

Unlike Plaintiff, the majority of officers go on road patrol directly after graduating from the police academy, including both male and female deputies. According to Plaintiff, since the time that she made her initial request to go on patrol, approximately 19 deputies were placed on the road, 5 of whom were female. Even before Plaintiff requested a patrol assignment, there were female officers in Putnam County on road patrol.

Plaintiff filed a charge with the Equal Employment Opportunity Commission on September 20, 2010. She does not claim to have suffered any adverse consequences from that filing, except to the extent that she was not placed on patrol until April 29, 2103. She remains a patrol officer to this day.

Since becoming a Deputy Sheriff in 2007, Plaintiff's pay has increased yearly, and her benefits have improved or remained the same each year.

Based upon the foregoing events, Plaintiff filed a two-count Complaint in this Court. In Count I, Plaintiff alleges that she was discriminated against on the basis of her gender in violation of the Title VII, 42 U.S.C. § 2000e *et seq.* In Count II, "Plaintiff alleges that the intentional acts and omissions" as described in the Complaint violated the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101. Defendants move for summary judgment on Plaintiff's Complaint in its entirety.

### III. APPLICATION OF LAW

The standards governing motions for summary judgment are well-known and need not be repeated in detail. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Having undertaken that review, it is clear that Defendants are entitled to summary judgment on Plaintiff's claims under Title VII and the THRA.[3]

In the absence of direct evidence (and there is none here), a plaintiff may prove her gender discrimination claim by circumstantial evidence and utilizing the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting paradigm. Under that framework, "plaintiff bears the burden of establishing a *prima facie* case of gender discrimination." Gielda v. Bangor Twp. Schs., 505 Fed. Appx. 550, 555 (6th Cir. 2012) (citing, Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981)). "Next, the defendant must 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Id. "Finally, the plaintiff must prove by a preponderance of the evidence that the articulated legitimate reason is merely a pretext for the discrimination." Id.; accord, Chattman v. Toho Tenax Amer., Inc., 686 F.3d 339, 347 (6th Cir. 2012).

"To make out a prima facie case of gender discrimination [Plaintiff] must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." Grace v. USCAR, 521 F.3d 655, 677 (6th Cir. 2008) (citing, Peltier v. United States, 388 F.3d 984, 987 (6th Cir. 2004)). Applying those factors, it is clear that two have been met: Plaintiff, being female, is in a protected class; and she was unquestionably qualified to be a road deputy. Where Plaintiff's claim fails (and what Plaintiff

---

[3] Title VII and THRA claims are analyzed identically. See, Aldridge v. City of Memphis, 404 Fed. Appx. 29, 37 n.9 (6th Cir. 2010); Pierce v. City of Humboldt, 2013 WL 1190823 at *9 (Tenn. Ct. App. Mar. 25, 2013).

5

entirely neglects to address in her response brief), however, is that she was not subjected to an adverse employment decision, nor were others treated more favorably.

"An adverse employment action in the context of a Title VII discrimination claim is a 'materially adverse change in the terms or conditions of employment because of the employer's actions.'" Michael v. Caterpillar Fin, Serv. Co., 496 F.3d 585, 593 (6th Cir. 2007) (quoting, Allen v. Michigan Dept. of Corr., 165 F.3d 405, 410 (6th Cir. 1999)). For there to be a materially adverse change, there must be something more "'disruptive than a mere inconvenience or an alteration of job responsibilities.'" Ford v. Gen'l Motors Corp., 305 F.3d 545, 553 (6th Cir. 2002) (quoting,. Hollins v. Atlantic Co., 188 F.3 652, 662 (6th Cir. 1999). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Id.

Plaintiff has pointed to nothing which would suggest that she suffered an adverse employment action. To the contrary, the undisputed evidence is that both patrol officers and SROs are deputy sheriffs, they have the same authority, they do the same jobs (albeit in different contexts), they wear the same uniforms, they drive the same vehicles, they carry the same weapon, and they receive the same benefits.

To be sure, Plaintiff wanted to go on the road to "serve the public," and claims that she did not get along with Vice Principal Pierce. However, "[a]n employee's subjective impressions as to the desirability of one position over another are not relevant" to the adverse employment action inquiry. Poliscastro v. Northwest Airlines, 297 F.3d 535, 539 (6th Cir. 2002); accord, Mitchell v. Vanderbilt Univ., 389 F.3d 177, 183 (6th Cir. 2005). Rather, the focus under Sixth Circuit law is the "objective indicia of adversity," and 'a purely subjective preference for one position over another' does not

6

'justify trundling out the heavy artillery of federal antidiscrimination law.'" Momah v. Dominquez, 239 Fed. Appx. 114, 124 (6th Cir. 2007) (quoting, O'Neal v. City of Chicago, 392 F.3d 909, 913 (7th Cir. 2004)).

Plaintiff has also not shown that others were treated more favorably than her. Leaving aside that SROs, just like patrol officers, are deputy sheriffs, Defendants claim (and Plaintiff does not dispute[4]) that, during the relevant period, there were three SROs, two of whom were males, that both males still work as SROs, and that neither received a re-assignment to patrol while Plaintiff did not.

Even if Plaintiff could establish a *prima facie* case, her gender discrimination claims fails because Defendants have articulated a legitimate non-discriminatory reason for its action, to wit, that it was in the interests of the department to keep Plaintiff in a position that she undeniably was doing well, and Plaintiff has not shown that reason to be pretextual.

Pretext may be shown by demonstrating "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the employment action], or (3) that they were insufficient to motivate [the employment action]." Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 460 (6th Cir. 2004). With respect to these avenues of proof, the Sixth Circuit has stated:

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are factually false. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity."
>
> The second showing, however, is of an entirely different ilk. There, the

---

[4] In her response brief, Plaintiff states that, after she "filed her Charge of Discrimination with the EEOC, at least two male officers were assigned to road patrol," (Docket No. 24 at 15), but, so far as the Court can tell, does not claim or show that those two male officers were SROs who had been reassigned.

> plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or a coverup.

Manzer v. Diamond Shamrock, 29 F.3d 1078, 1084 (6th Cir. 1994); accord, Pennington v. Western Atlas, Inc., 202 F.3d 902 909-10 (6th Cir. 2000)).

Plaintiff cannot show that the stated reason for failing to transfer her had no basis in fact, or that it was insufficient to motivate the decision. To the contrary, she conceded in her deposition that it was reasonable for the Sheriff to maintain the status quo because she was doing an excellent job as a SRO. That leaves the possibility that the Sheriff's explanation is but a coverup for discrimination, and the real reason she was not transferred was because she is female. Plaintiff has presented no evidence from which a reasonable jury could conclude that her gender, more likely than not, was the real reason she remained an SRO.

Ignoring that Plaintiff worked as a road deputy when school was on break which implicitly demonstrates that the Sheriff thought her capable of performing such duties, Plaintiff harps on the alleged fact that, after she made her request to go on patrol, 19 officers were assigned to the patrol division. This proves nothing, other than that both males and females were placed on patrol duties, and suggests a lack of bias against females as patrol officers, a point which is further underscored by Plaintiff's acknowledgment in her deposition that there were female patrol officers even before she made her requests to transfer.

Further, while Lt. Whitehead is alleged to have told Plaintiff that she would not go on patrol because she is small and female, and while Deputy Chief Farley is alleged to have made observations

8

about the department not being family friend and about Plaintiff being a single mom, there is no showing that Sheriff Andrews was swayed by any such opinions or alleged comments, and certainly no evidence that those subordinates were "the driving force behind the employment action." Roberts v. Principi, 283 Fed. Appx. 325, 333 (6th Cir. 2008); see, Bishop v. Ohio Dept. of Rehabilitations and Corr., 2013 WL 3388481 at *10 (6th Cir. 2013) (internal citation omitted) ("the employee 'must offer evidence of a 'causal nexus' between the ultimate decisionmaker's decision to terminate the [employee] and the supervisor's discriminatory animus" . . . [i]n other words, the employee must show that, '[b]y relying on this discriminatory information flow, the ultimate decisionmakers acted as the conduit of the supervisor's prejudice'"). Plaintiff's proof falls far short from establishing that the "sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or a coverup." Manzer, 29 F.3d at 1084; see, Nicholson v. City of Clarksville, 2013 WL 3746098 at *10 (6th Cir. July 17, 2013) (citation omitted) (plaintiff retains "'the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [defendant's] explanation and infer that [defendant] intentionally discriminated against h[er].'"

Withal, this Court does not "act[ ] as a super personnel department, overseeing and second guessing employers' business decisions." Bender v. Hecht's Dep't Stores, 455 F.3d 612, 627 (6th Cir. 2006) (internal quotation marks omitted). In the absence of any evidence of discrimination, the Court is not about to get into the business of deciding how the Putnam County Sheriff should assign his deputies.

In their briefing, the parties also discuss Plaintiff's retaliation claim, but the Court finds no such claim pled. Rather, the Complaint alleges gender discrimination, and retaliation is nowhere mentioned.

Regardless, to the extent Plaintiff seeks to pursue a retaliation claim because others were

9

placed on road patrol before she was (and after her EEOC charge), the same fails for the reasons already expressed.

A retaliation claim utilizes the same burden-shifting approach as a discrimination claim, and "[t]o make a prima facie showing of retaliation, plaintiff must show that (1) [she] engaged in protected activity, (2) the activity was known to the defendant, (3) plaintiff was subjected to materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action." Harris v. Metro. Gov't of Nashville & Davidson County, 594 F.3d 476, 485 (6th Cir. 2010). While "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous," Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000), Plaintiff has not shown that she was subjected to a materially adverse action. Nor has she shown that the Sheriff did not have a legitimate reason for his assignment of deputies, including Plaintiff, or that the stated reason for retaining Plaintiff as a SRO was some sort of mask to hide the fact that she complained to the EEOC about her assignment.

## IV. CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment will be granted, and this case will be dismissed.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE